**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

**CIVIL ACTION NO.: _____**

**WILMA BLANTON, INDIVIDUALLY AND**              **PLAINTIFFS**
**AS GUARDIAN OF LARRY BLANTON,**
234 Blanton Branch Road
Salyersville, Kentucky 41465

**RONALD BLANTON,**
50 Blanton Branch Road
Salyersville, Kentucky 41465

**AND**

**JUSTIN WILLIAMS**
236 Blanton Brach Road
Salyersville, Kentucky 41465

**v.**

**REMINGTON ARMS COMPANY, LLC,**              **DEFENDANTS**

     **Serve: The Corporation Trust Company, Agent for Service of Process**
           **Corporation Trust Center, 1209 Orange St.**
           **Wilmington, DE 19801**

**AND**

**REMINGTON OUTDOOR COMPANY, INC.**

     **Serve: Remington Arms Company, LLC, Agent for Service of Process**
           **870 Remington Drive**
           **Madison, NC 27025**

---

**COMPLAINT**
**WITH JURY DEMAND**

---

1

**INTRODUCTION**

1.      Until the incident that gave rise to this case, Larry Blanton, now 68 years old, was an avid hunter and experienced marksman having shot rifles and guns since he was five years old. Throughout his life, he has owned, and he continues to own, numerous rifles made by Remington and other gun manufacturers.

2.      On February 17, 2019, Larry Blanton purchased a Remington 770 bolt-action rifle at the Walmart near his home in Salyersville, Magoffin County, Kentucky.  He intended to use the rifle to shoot coyotes that had been invading his land, on which he lived with his wife, Wilma Blanton, his son, Ronald Blanton, his daughter, Suzie Williams, and grandson, Justin Williams.

3.      On February 17, 2019, Justin Williams fired the Remington 770 without incident.

4.      On February 18, 2019, Larry Blanton placed the Remington 770 into a Caldwell vice in order to sight the weapon.

5.      On February 18, 2019, Larry Blanton fired the Remington 770 once, without incident.

6.      Having missed the target on his first shot, on February 18, 2019, Larry Blanton loaded a second round into the Remington 770 while it was still within the Caldwell vice.  Rather than lock the bolt down to fire the rifle, Larry Blanton opened the bolt and placed the Remington 770 into what is known as "hunter's safe" so that he could adjust the position of the Remington 770.

7.      As Larry Blanton sat behind the Remington 770, the Remington 770 discharged by itself, with the bolt fully open and without the trigger being pulled.

8.      Even though the bolt was open, because of a defect in design and manufacture, the firing pin of the Remington 770 moved forward until it engaged the primer of the Winchester .243

2

caliber round, causing the round to fire while in the chamber of the Remington 770 propelling the entire bolt backwards off of the weapon and into Larry Blanton's chest.

9.     The impact into Larry Blanton's chest was so violent that it shore off the bolt handle from the bolt upon impact.

10.     Ronald Blanton, Larry Blanton's son, and Justin Williams, Larry Blanton's grandson, were with Larry Blanton at the time he was impaled by the bolt of the Remington 770.

11.     Larry Blanton was catastrophically injured and will likely never fully recover.

12.     The parties have engaged in extensive pre-litigation discovery prior to the filing of this Complaint including, but not limited to, joint inspection and testing of the subject Remington 770.

## THE PARTIES

13.     Plaintiff Wilma Blanton is the wife of Larry Blanton.  Wilma Blanton was appointed Guardian of Larry Blanton by the Magoffin County District Court on March 25, 2019, 2019.  A true and correct copy of the Order appointing Wilma Blanton as Guardian of Larry Blanton is attached hereto and made a part hereof as **Exhibit A**.

14.     Wilma Blanton and Larry Blanton are individuals residing in Magoffin County, Kentucky with an address of 234 Blanton Branch Rd., Salyersville, KY 41465.

15.     Plaintiff Ronald Blanton is the son of Larry Blanton and an individual residing in Magoffin County, Kentucky with an address of 50 Blanton Branch Rd, Salyersville, KY.

16.     Plaintiff Justin Williams is the grandson of Larry Blanton and an individual residing in Magoffin County, Kentucky with an address of 236 Blanton Branch Road, Salyersville, KY.

17.     Defendant Remington Arms Company, LLC ("Remington Arms"), is a Delaware corporation with its headquarters and principal place of business in Madison, North Carolina.  It is not a citizen of Kentucky, but it conducts business without limitation in Kentucky.

18.     Defendant Remington Outdoor Company, Inc. ("Remington Outdoor") is a Delaware corporation with its principal place of business in Madison, North Carolina.  It is not a citizen of Kentucky, but it conducts business without limitation in Kentucky.

19.     At all times described herein, Defendants, Remington Arms and Remington Outdoor (collectively "Defendants") were engaged in interstate commerce, including commerce within the Commonwealth of Kentucky, in the advertisement, marketing, distribution, and sale of the Remington Model 770 rifles.

## JURISDICTION AND VENUE

20.     Venue is proper and this Court has subject matter jurisdiction over this action as Plaintiffs are residents of Magoffin County, Kentucky and because the accident which forms the basis for this Complaint occurred in Magoffin County, Kentucky.

21.     This Court has personal jurisdiction over Defendants because Defendants maintain significant contacts within the Commonwealth of Kentucky by virtue of conducting business within the Commonwealth of Kentucky and Magoffin County through their distribution, sales, marketing, and advertising, without limitation.

22.     The Kentucky Products Liability Act was enacted to protect consumers and provide them with an avenue for compensation when injured by defective products.  *Miller v. Bernard*, 2003-CA-000590-MR, 2004 WL 1635789 at *3 (Ky. Ct. App. July 23, 2004) (citing *Custom Prod., Inc. v. Fluor Daniel Canada, Inc.*, 262 F.Supp.2d 767, 773-74 (W.D. Ky. 2003).

4

## THE INJURY TO LARRY BLANTON

23.     As a result of the Remington 770's defect, Larry Blanton was impaled in his right chest by the bolt of the Remington 770 causing severe injuries to his sternum and vascular system.

24.     As a result of the Remington 770's defect, Larry Blanton underwent a right thoracotomy tube placement, a sternotomy closure, and a chest wall reconstruction. Further, Larry Blanton underwent numerous procedures to repair his arteries which were severed and/or otherwise damaged by the impalement of the Remington 770 bolt, including an open repair of his thoracic subclavian artery, stent graft procedure of the subclavian axillary arteries, thrombectomy of the subclavian artery, axillary artery, brachial artery ulnar artery and radial artery, and a ligation of his thoracic thyrocervical trunk vein.

25.     As a result of the Remington 770's defect, Larry Blanton suffered a severe anterior circulation ("AC") stroke, anemia, an acute kidney injury, acute respiratory failure, rib fractures and lung deconditioning.

26.     As a result of the Remington 770's defect, Larry Blanton required placement of a tracheostomy, a PEG tube and central line.

27.     As a result of the Remington 770's defect, Larry Blanton suffered from a left anterior cerebral artery ("ACA") infarct, bilateral cerebellar infarcts, right hemiparesis, and spasticity.

28.     As a result of the Remington 770's defect, Larry Blanton is immobile, incommunicative, and suffers from severe cognitive and physical impairments.

29.     As a result of the Remington 770's defect, Larry Blanton is severely and permanently disabled, and has suffered and will continue to suffer extreme and severe physical and emotional distress and pain and suffering.

30.     As a result of the Remington 770's defect, and Larry Blanton's injuries caused thereby, Larry Blanton has been confined to Salyersville Nursing and Rehabilitation Center in isolation (away from his family and friends) since March 10, 2020 due to the Covid-19 global pandemic.

31.     The injuries described in this Complaint are a direct and proximate result of the joint and several acts or omissions of Defendants as set forth herein, singularly or in combination.

## THE REMINGTON MODEL 770

32.     Since 2001, Defendants have designed, manufactured, and marketed the Remington Model 770 containing latent defects as described herein.

33.     In designing the Remington 770, Defendants abandoned proven safe designs in favor of a design more economical to manufacture, resulting in a product that is defective and unreasonably dangerous.

34.     Specifically, Defendants have foregone the use of wrought steel in the design and manufacture of the Remington 770 firing pin head. Instead, the Remington 770 is designed and manufactured with materials defective in strength and durability, resulting in a firing pin head that cannot withstand the forces generated in the operation of the rifle. The firing pin head of the Remington 770 is also diminished in size in comparison to firing pin heads of other Remington models.

35.     Further, in designing and manufacturing the Remington 770, Defendants, jointly and severally, abandoned the bladed firing pin design of previous models. Instead, the Remington 770 is designed and manufactured with a three-piece firing pin unit with two threaded connections, which is weaker and not capable of handling severe tensile distress. The firing pin of the Remington 770 design also lacks mechanisms for blocking the firing pin in the event of a failure.

6

36.    The altered and weaker design of the firing pin head resulted in a defective and unreasonably dangerous firearm reasonably foreseeable to cause injury or death.

37.    The latent defects of the Remington 770 described herein led to the breaking of the firing pin head of Larry Blanton's Remington 770 that occurred when Larry Blanton opened the bolt. The breaking of the firing pin head permitted the firing pin to extend forward and engage the primer on the cartridge. The ignition of the cartridge caused the bolt to propel backwards and into the chest of Larry Blanton, thereby causing his severe and debilitating injuries.

## DEFENDANTS' KNOWLEDGE OF THE DANGEROUS DEFECTS IN THE REMINGTON MODEL 770

38.    Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

39.    Defendants knew or should have known of the dangerous defective design of the Remington 770 when they made the decision to forego the use of wrought steel in the design and manufacture of the firing pin head.

40.    Defendants knew or should have known of the dangerous defective design of the Remington 770 when they made the decision to utilize a firing pin head in the design of the Remington 770 that was a diminished in size in comparison to the firing pin heads of other Remington models.

41.    Defendants knew or should have known that designing and manufacturing the Remington 770 firing pin head with materials defective in strength and durability would result in a weaker firing pin head that cannot withstand the forces generated in the operation of the rifle.

42.    Defendants knew or should have known of the dangerous defective design of the Remington 770 as Defendants utilized a three-piece firing pin unit with two threaded connections, which is not designed to handle severe tensile distress.

7

43.     Defendants knew or should have known of the dangerous defective design of the Remington 770 as Defendants, in designing the Remington 770, abandoned provisions that would prevent the rifle from firing with the bolt open. Such provisions are known to the Defendants as they were used in the design and manufacture of Defendants' other, more expensive, rifle models.

44.     Upon information and belief, Defendants were "on notice" of the dangerous defective design of the Remington 770 given complaints it has received directly from customers, and the fact that Defendants have had to replace and/or repair bolts and/or firing pins of customers' Remington 770 rifles that were damaged as a result of the latent defects described herein.

## COUNT I
## STRICT LIABILITY – MANUFACTURING DEFECTS

45.     Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

46.     Defendants are obligated to refrain from placing in the stream of commerce products that were in defective condition, unreasonably dangerous to foreseeable purchasers and users of its products.

47.     At all times pertinent to this action, Larry Blanton was using the Remington Model 770 for the purposes for which it was intended by Defendants and in a manner that was foreseeable, and without any knowledge or notice of the defective condition that was unreasonably dangerous in the Remington Model 770.

48.     At the time the Remington Model 770 was manufactured and placed into the stream of commerce by Defendants, it contained manufacturing defects that were unreasonably dangerous to persons, such as Larry Blanton.

49.     As a result of the manufacturing defects of the Remington 770, the Remington 770 purchased by Larry Blanton failed to perform as an ordinary consumer would expect when

8

utilizing the rifle in an intended and/or reasonably foreseeable manner. As a direct and proximate result of the manufacturing defects of the Remington Model 770, Larry Blanton's Remington Model 770 fired inadvertently and resulted in him suffering catastrophic injuries.

50.     The manufacturing defects of the Remington 770 were the direct and proximate cause of the injuries and damages suffered by Larry Blanton.

51.     As such, Wilma Blanton as Guardian of Larry Blanton is entitled to recover compensatory damages in excess of the minimum jurisdictional limits of this Court.

**COUNT II**
**STRICT LIABILITY – DESIGN DEFECT**

52.     Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

53.     Defendants are obligated to refrain from placing in the stream of commerce products that were in defective condition, unreasonably dangerous to foreseeable purchasers and users of its products.

54.     At all times pertinent to this action, Larry Blanton was using the Remington Model 770 for the purposes for which it was intended by Defendants and in a manner that was foreseeable, and without any knowledge or notice of the defective condition that was unreasonably dangerous in the Remington Model 770.

55.     At the time the Remington Model 770 was designed and placed into the stream of commerce by Defendants, it contained design defects that were unreasonably dangerous to persons, such as Larry Blanton, who reasonably would encounter such product as it was put to its intended use.

56.     As a result of the design defects of the Remington 770, the Remington 770 purchased by Larry Blanton failed to perform as safely an ordinary consumer would expect when

9

utilizing the rifle in an intended and/or reasonably foreseeable manner and/or the risk of danger inherent in the design of the vehicle outweighed the benefits of its design.

57. As a direct and proximate result of the design defects of the Remington Model 770, Larry Blanton's Remington Model 770 fired inadvertently and resulted in him suffering catastrophic injuries.

58. The design defects of the Remington 770 were the direct and proximate cause of the injuries and damages suffered by Larry Blanton.

**COUNT III**
**<u>NEGLIGENCE – MANUFACTURING</u>**

59. Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

60. Defendants owed a duty of care to Larry Blanton and other persons similarly situated to use reasonable care in designing, testing, assembling, manufacturing, inspecting, marketing and selling of the Remington 770 at issue and in the testing of any component parts made by another so that the rifle would be safely used in a manner and for the purpose for which it was made.

61. Defendants breached their duty of ordinary care to Plaintiffs by designing, developing, testing, manufacturing, inspecting, marketing and selling the Remington 770 in such a negligent manner that it was likely to malfunction even while being used in an intended and/or reasonably foreseeable manner.

62. The negligent design, development, testing, manufacturing, inspecting, marketing and selling of the Remington 770 was a direct and proximate cause of the injuries and damages suffered by Larry Blanton.

63.     As such, Wilma Blanton as Guardian of Larry Blanton is entitled to recover compensatory damages in excess of the minimum jurisdictional limits of this Court.

## COUNT IV
## NEGLIGENCE – DESIGN DEFECTS

64.     Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

65.     Defendants owed a duty of ordinary care to Plaintiffs and other persons similarly situated in designing, developing, testing, manufacturing, inspecting, marketing, and selling of the Remington Model 770 at issue so that the rifle would be safely used in a manner and for the purposes for which it was made.

66.     Defendants breached their duty of ordinary care to Plaintiffs by designing, developing, testing, inspecting, manufacturing, marketing and selling the Remington 770 in such a negligent manner that it was likely to malfunction even while being used in an intended and/or reasonably foreseeable manner.

67.     The negligent design, development, testing, manufacturing, inspecting, marketing and selling of the Remington 770 was a direct and proximate cause of the injuries and damages suffered by Larry Blanton.

68.     As such, Wilma Blanton as Guardian of Larry Blanton is entitled to recover compensatory damages in excess of the minimum jurisdictional limits of this Court.

## COUNT V
## STRICT LIABILITY – DEFECTIVE WARNINGS

69.     Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

11

70. At the time the Remington 770 was designed, manufactured, and placed into the stream of commerce by the Defendants, it lacked and/or contained defective warnings that rendered the Remington 770 unreasonably dangerous to persons, such as Larry Blanton, who was an intended and/or reasonably foreseeable user.

71. At all times material hereto, the Remington 770 was maintained and the warnings read and comprehended as often and as completely as a reasonably prudent person would have done under the same or similar circumstances and, at no time material hereto, was the Remington 770 subjected to any unintended and/or unforeseeable conditions.

72. At all times material hereto, the use of the Remington 770 in a manner that was intended and/or reasonably foreseeable by the Defendants involved substantial danger that would not be readily recognized by an ordinary user of the rifle, like Larry Blanton.

73. At all times material hereto, the danger(s) were known or knowable by Defendants in light of the generally recognized and prevailing best scientific knowledge available at the time of the design, manufacture and distribution of the rifle.

74. At all times material hereto, Defendants had a duty to provide adequate warnings to intended and reasonably foreseeable users, such as Larry Blanton, on how to use, maintain, recognize, and appreciate the dangers inherent with the Remington 770.

75. At all times material hereto, Defendants failed to give adequate warnings of the dangers associated with the use of the Remington 770, or of the facts that made it likely that the Remington Model 770 was dangerous.

76. As a result of the lack of and/or defective warnings, the Remington 770 failed to perform as safely as an ordinary consumer would expect when utilizing the rifle in an intended and/or reasonably foreseeable manner and/or the risk of danger inherent in the lack of and/or

12

defective warnings on or with the Remington 770 outweighed the benefits of the warnings, design and use of the rifle.

77.     The lack of and/or defective warnings on or with the Remington 770 was a direct and proximate cause of the injuries and damages suffered by Larry Blanton.

78.     As such, Wilma Blanton as Guardian of Larry Blanton is entitled to recover compensatory damages in excess of the minimum jurisdictional limits of this Court.

**COUNT VI**
**NEGLIGENCE - WARNINGS**

79.     Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

80.     At all times material hereto, the use of the Remington 770 at issue in a manner that was intended and/or reasonably foreseeable by the Defendants involved the risks of the breaking of the firing pin head and rifle firing in the bolt open position that would not be readily recognized by an ordinary user of the rifle, such as Larry Blanton.

81.     At all times material hereto, this danger was known or knowable by the Defendants in light of the generally recognized and prevailing best scientific knowledge available at the time of the design, manufacture and distribution of the Remington 770.

82.     At all times material hereto, Defendants had a duty to provide adequate warnings to intended and foreseeable users such as Larry Blanton.

83.     At all times material hereto, Defendants failed to give adequate warnings of the dangers associated with the Remington 770.

84.     The lack of and/or negligent warnings on the Remington 770 were a direct and proximate cause of the injuries and damages suffered by Larry Blanton.

85.     As such, Wilma Blanton as Guardian of Larry Blanton is entitled to recover compensatory damages in excess of the minimum jurisdictional limits of this Court.

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

86.     Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

87.     KRS 355.2-314 creates a warranty that the defective Remington Model 770 shall be merchantable if it is sold by a seller who is a merchant with respect to goods of that kind. Defendants have sold and continue to sell goods identical to or similar to the Remington Model 770 at issue in this litigation.

88.     Defendants impliedly warranted to the public that the Remington 770, as sold, was merchantable, suitable for purchase, and safe for use by placing the Remington 770 into the market for public purchase.

89.     The Remington 770 sold to Larry Blanton contains latent defects, which, during their ordinary and anticipated performance, caused an unsafe condition to arise, causing severe and debilitating injuries to Larry Blanton while he was using the rifle in a foreseeable manner.

90.     Larry Blanton had the reasonable general expectation that the Remington 770 he purchased was suitable and safe for purchase, and was designed and manufactured without defective components.

91.     Defendants breached the implied warranty of merchantability by selling a defectively designed, developed, tested, and manufactured firearm to Larry Blanton.

92.     As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, KRS 355.2-314, Larry Blanton suffered injuries and damages.

93.     As such, Wilma Blanton as Guardian of Larry Blanton is entitled to recover compensatory damages in excess of the minimum jurisdictional limits of this Court.

## COUNT VIII
## <u>BREACH OF EXPRESS WARRANTY</u>

94.     Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

95.     KRS 355.2.313 provides that express warranties are created by a seller through any affirmation of fact or promise made by the seller to the buyer, which relates to the goods and becomes a basis of the bargain; thereby creating an express warranty that the goods shall conform to the affirmation or promise.

96.     Defendants made an express warranty with Larry Blanton, through advertising, marketing, packaging, and the sale of the subject defective Remington Model 770, that the firearm was not defective or unreasonably dangerous.

97.     Defendants have known, and were put on notice, of the latent defects of the Remington 770, constituting breach of the Express Warranty.

98.     These latent defects include, but are not limited to, the altered and weakened design and manufacture of the firing pin head and firing pin, which resulted in a defective and unreasonably dangerous firearm reasonably foreseeable to cause injury or death.

99.     As a result of the defects in the design and manufacture of the Remington 770, Larry Blanton's rifle fired with the bolt open, causing the bolt to propel backwards and into the chest of Larry Blanton, who was utilizing the rifle in its foreseeable manner.

100.    Larry Blanton had the reasonable general expectation that he could operate his Remington 770 rifle in the manner in which he was utilizing it at the time of this accident without

the threat of injury and that the rifle he was using was designed and manufactured without defective components.

101.     As a direct and proximate result of Defendants' breach of express warranty, KRS 355.2-313, Larry Blanton suffered injury and damages.

102.     As such, Wilma Blanton as Guardian of Larry Blanton is entitled to recover compensatory damages in excess of the minimum jurisdictional limits of this Court.

## COUNT IX
## BREACH OF IMPLIED WARRANTY: FITNESS FOR A PARTICULAR PURPOSE

103.     Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

104.     KRS 355.2-315 directs that Larry Blanton, in purchasing the subject Remington Model 770 from Defendants, was able to rely on the Defendants' skill or judgment in selecting, selling, or furnishing suitable goods, and that those goods shall be fit for such a purpose.

105.     Defendants impliedly warranted to the public residing in Kentucky that the Remington 770, as sold, was safe for future use and fit for such purpose.

106.     The Remington 770 sold to Larry Blanton contains latent defects which, during their ordinary and anticipated performance, caused an unsafe condition to arise, causing severe and debilitating injuries to Larry Blanton while he was using the rifle in a foreseeable manner.

107.     Larry Blanton had the reasonable general expectation that he could operate his Remington 770 rifle in the manner in which he was utilizing it at the time of this accident without the threat of injury and that the rifle he was using was designed and manufactured without defective components.

108.     By selling a defective firearm to Larry Blanton, Defendants violated the implied warranty that the Remington Model 770 was fit for a particular purpose.

16

109. As a direct and proximate result of Defendants' breach of implied warranty of fitness for a particular purposes, KRS 355.2-315, Larry Blanton suffered injuries and damages.

110. As such, Wilma Blanton as Guardian of Larry Blanton is entitled to recover compensatory damages in excess of the minimum jurisdictional limits of this Court.

**COUNT X**
**COMMON LAW FRAUD AND VIOLATION OF KENTUCKY**
**CONSUMER PROTECTION ACT**

111. Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

112. Defendants knew or should have known of the dangerous defective design of the Remington 770 as a result of foregoing the use of wrought steel in the design and manufacture of the firing pin head that is diminished in size in comparison to the firing pin heads of other Remington models.

113. Defendants knew or should have known that designing and manufacturing the Remington 770 firing pin head with materials defective in strength and durability would result in a weaker firing pin head that cannot withstand the forces generated in the operation of the rifle.

114. Defendants knew or should have known of the dangerous defective design of the Remington 770 as Defendants utilized a three-piece firing pin unit with two threaded connections which is not designed to handle severe tensile distress.

115. Defendants knew or should have known of the dangerous defective design of the Remington 770 as Defendants, in designing the Remington 770, abandoned provisions which would prevent the rifle from firing with the bolt open. Such provisions are known to the Defendants as they were used in the design and manufacture of Defendants' other rifle models.

116.     Upon information and belief, Defendants were "on notice" of the dangerous defective design of the Remington 770 given complaints it has received directly from customers, and the fact that Defendants have had to replace and/or repair bolts of customers' Remington 770 rifles that were damaged as a result of the latent defects described herein.

117.     Upon information and belief, at the time Larry Blanton purchased the Remington 770 in question, Defendants were fully aware of the dangerous defective design of the Remington 770 and had engaged in deceptive conduct, unconscionable commercial practices, fraud or knowing concealment, failure to warn, nondisclosure, suppression or omission of material facts with the intent that others rely upon such concealment, nondisclosure, suppression and/or omission.

118.     Defendants violated KRS 367.170 by acting in an unfair, false, misleading or deceptive manner in the conduct of Defendants' trade or commerce.   Defendants' failure to properly design, test, manufacture, market, and failure to warn about the defective Remington Model 770 constitutes a violation of Kentucky's Consumer Protection Act.

119.     Pursuant to KRS 367.220, Larry Blanton is entitled to an award of actual damages, equitable relief, punitive damages, attorneys' fees, and costs.

## COUNT XI
## LOSS OF CONSORTIUM – WILMA BLANTON

120.     Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein.

121.     Wilma Blanton is, and was at all pertinent time to this action, the wife of Larry Blanton.  By reason of Larry Blanton's catastrophic injuries, Wilma Blanton has suffered the loss of services, assistance, aid and conjugal relationship with her husband, which were of great value to her.

18

122.    As a result of Wilma Blanton's loss of consortium, Wilma Blanton is entitled to recover compensatory and punitive damages in excess of the minimum jurisdictional limits of this Court.

## COUNT XII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UPON RONALD BLANTON AND JUSTIN WILLIAMS

123.    Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein

124.    Ronald Blanton was present for and witnessed the failure of the Remington 770 and the resulting catastrophic injuries that occurred to Larry Blanton, his father, as a result of the malfunction of the Remington 770.

125.    Justin Williams was present for and witnessed the failure of the Remington 770 and the resulting catastrophic injuries that occurred to Larry Blanton, his grandfather, as a result of the malfunction of the Remington 770.

126.    Defendants recklessly and/or intentionally were negligent in their design, manufacturing, and placing into the stream of commerce a firearm they knew or had reason to know was in a defective condition, unreasonably dangerous.

127.    Defendant's  negligence in designing, manufacturing, and placing into the stream of commerce a firearm that they knew, or had reason to know was in a defective condition, unreasonably dangerous, amounts to extreme and outrageous conduct.

128.    The conduct engaged in was so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

19

129. The failure of the defective and unreasonably dangerous firearm proximately caused Ronald Blanton and Justin Williams to suffer extreme and severe emotional distress

130. The Defendants are liable to Ronald Blanton and Justin Williams for negligent infliction of emotional distress.

131. As such, Ronald Blanton and Justin Williams are entitled to recover compensatory and punitive damages in excess of the minimum jurisdictional limits of this Court.

## COUNT XIII
## PUNITIVE DAMAGES

132. Plaintiffs hereby adopt, reiterate and incorporate all allegations set forth in the preceding paragraphs as if fully set forth herein

133. At all pertinent times to this action, Defendants knew or should have known of the defective, unreasonably dangerous conditions of the Remington Model 770 resulting from its defective design and manufacture. Defendants knew of their duties and obligations to consumers to provide safe products to them, to warn such consumers of all known unreasonable dangers and defective conditions, and to recall all Model 770 rifles.

134. Despite Defendants' knowledge of the dangers and defective conditions inherent in the Remington Model 770, Defendants knowingly, recklessly, willfully, and wantonly failed to take appropriate measures to remedy the defects in the Remington Model 770 or to warn Larry Blanton or other users of said dangers but, rather, chose instead to maximize profits, which profits the Defendants calculated would exceed the monetary exposure represented by potential liability for injuries caused by their product.

135. Defendants acted in a willful, wanton, and malicious manner and with reckless disregard for the health and safety of Larry Blanton, and the public in general, by, inter alia, demonstrating extreme indifference to the safety of Larry Blanton.

20

136.    As a direct and proximate result of the willful, wanton, and malicious joint and several acts, omissions, and conduct of Defendants in reckless disregard for the health and safety of the public and Larry Blanton, Plaintiffs are entitled to an award of punitive damages against all Defendants, jointly and severally.

**COUNT XIV**
**<u>CAUSATION AND DAMAGES</u>**

137.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

138.    As a direct and proximate result of the conduct of the Defendants, Plaintiffs have incurred the following damages:

> a.  Mental anguish and mental pain and suffering;
>
> b.  Past and Future Medical expenses;
>
> c.  Emotional Distress;
>
> d.  Attorneys' fees and costs;
>
> e.  Punitive damages.

**WHEREFORE**, Plaintiffs, Wilma Blanton, individually and in her capacity as Guardian of Larry Blanton, Ronald Blanton, and Justin Williams demand as follows:

1.    Judgment in favor of Plaintiff Wilma Blanton, as Guardian of Larry Blanton and against Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc., jointly and severally, for compensatory damages for all injuries and losses complained of herein, together with interest from the date of injury until same is paid;

2.    Judgment in favor of Plaintiff Wilma Blanton, as Guardian of Larry Blanton and against Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc., jointly and severally, for an additional judgment of punitive damages based upon the conduct of

Defendants that was willful, wanton, reckless, and in extreme indifference to the health and safety of Larry Blanton;

3. Judgment in favor of Plaintiff Wilma Blanton, individually, and against Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc., jointly and severally for Plaintiff Wilma Blanton's loss of consortium of Larry Blanton;

4. Judgment in favor of Plaintiff Ronald Blanton and against Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc., jointly and severally, for compensatory damages for all injuries and losses complained of herein, together with interest from the date of injury until same is paid;

5. Judgment in favor of Justin Williams against Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc., jointly and severally, for compensatory damages for all injuries and losses complained of herein, together with interest from the date of injury until same is paid;

6. Judgment in favor of Plaintiff Ronald Blanton against Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc., jointly and severally, for an additional judgment of punitive damages based upon the conduct of Defendants that was willful, wanton, reckless, and in extreme indifference to the health and safety of Larry Blanton;

7. Judgment in favor of Plaintiff Justin Williams against Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc., jointly and severally, for an additional judgment of punitive damages based upon the conduct of Defendants that was willful, wanton, reckless, and in extreme indifference to the health and safety of Larry Blanton;

8. Trial by jury; and

22

9.     That Plaintiffs Wilma Blanton, individually and as Guardian of Larry Blanton, Ronald Blanton, and Justin Williams be awarded all of the damages enumerated above, including actual, consequential, incidental and foreseeable damages, punitive damages, attorneys' fees, costs herein expended, pre-judgment and post-judgment interest at the legal rate on all sums awarded for which such interest may be imposed, and any and all equitable relief that may be appropriate.

This, the 28th day of May, 2020.

Respectfully submitted,

*/s/ Masten Childers, III*
Masten Childers, III, Esq.
E. Megan Lyons, Esq.
Lesley A. Cayton, Esq.
*Whiteford Taylor & Preston LLP*
161 North Eagle Creek Drive, Suite 210
Lexington, Kentucky 40509
mchilders@wtplaw.com
mlyons@wtplaw.com
lcayton@wtplaw.com
Telephone No. (859) 687-6699
Facsimile No. (859) 263-3239

C. Allen Foster, Esq. (*pro hac vice* forthcoming)
Erik D. Bolog, Esq. (*pro hac vice* forthcoming)
Eric C. Rowe, Esq. (*pro hac vice* forthcoming)
*Whiteford Taylor & Preston LLP*
1800 M Street, NW, Suite 450N
Washington, D.C. 20036
cafoster@wtplaw.com
ebolog@wtplaw.com
erowe@wtplaw.com
Telephone No. (202) 659-6800
Facsimile No. (202) 331-0573

*Counsel for Plaintiffs*

23